# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CORRADINA S.,[1]

       Plaintiff,

                                **Case No. 3:23-cv-3121**

    v.                         **Magistrate Judge Norah McCann King**

FRANK BISIGNANO,[2]
Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Corradina S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

## I.    PROCEDURAL HISTORY

On November 2, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since May 13, 2018. R. 92–93, 144–45, 250–58. The applications were denied initially and upon reconsideration. R. 151–84. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 185–86. ALJ Dina Loewy held hearings on August 6, 2020, and September 30, 2020, at which Plaintiff, who was represented by counsel, testified. R. 66–91. A vocational expert also appeared and testified at the second hearing. R. 53–64. In a decision dated June 2, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 13, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 20–30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 21, 2022. R. 6–11. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 10, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[3] On February 16, 2024, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

**B.**      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 13, 2018, her alleged disability onset date, and the date of the decision. R. 23. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. *Id*.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the knees, right shoulder disorder, carpal tunnel syndrome, obesity, asthma, and obstructive sleep apnea were severe impairments, but that Plaintiff's medically determinable impairments of goiter and headaches were not severe. *Id*. The ALJ went on to find that Plaintiff's alleged depression and anxiety were not medically determinable impairments or, if medically determinable, they were not severe. R. 23–24.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25–26.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 26–30. The ALJ also found that this RFC permitted the

performance of Plaintiff's past relevant work as a registration clerk. R. 30. The ALJ therefore

concluded that Plaintiff was not disabled within the meaning of the Social Security Act from

May 13, 2018, Plaintiff's alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision

of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Opening

Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that

his decision should be affirmed in its entirety because the ALJ's decision correctly applied the

governing legal standards, reflected consideration of the entire record, and was supported by

sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On February 20, 2020, Ashley Lyden, Psy.D., conducted a consultative psychological

evaluation. R. 923–26.[4] Plaintiff reported that she had seen a therapist in 2005 for six months to

deal with stress, but otherwise she denied prior mental health history. R. 924. She also reported

that she had been involved in a motor vehicle accident in January 2020. R. 923. Upon mental

status examination, Dr. Lyden noted that Plaintiff was well-groomed, cooperative, and calm; her

affect was appropriate to the situation; her mood was depressed; her speech was normal; there

was no evidence of thought disorder; she denied suicidal ideation or intent; she was fully

oriented; and she demonstrated good general fund of information and good abstract reasoning

ability. R. 923. Dr. Lyden further noted that Plaintiff

> is having difficulty coping *as a result of this motor vehicle accident*. She is
> experiencing significant psychological distress, which includes irritability, fatigue
> and moodiness, loss of social interest, periods of crying, she is depressed with

---

[4] This document's page numbering indicates that it is a nine-page document. *Id*. (reflecting "Page
2 of 9[,]" etc., along bottom center of each page). However, only the first four pages of the
document appear in the record. *See id*.; *see also* R. 926 (reflecting, *inter alia*, Dr. Lyden's
signature).

appetite and sleep problems. She is anxious and fearful and has given up activities she used to enjoy. [Plaintiff] has lost motivation to accomplish tasks.

In addition, [Plaintiff] is reporting problems of concentration and reading comprehension. She has difficulty with attention as well; these may be signs of a Post-Concussion Syndrome; a neurocognitive evaluation will be recommended to fully assess these concerns and make recommendations for a potential program of cognitive remediation.

*Id.* (emphasis added). Dr. Lyden also described the results of Plaintiff's Neuro-Behavioral Status

Examination:

[Plaintiff's] responses indicate that she is unable to think as clearly as usual since this accident, her thoughts are slower. She has difficulty understanding topics in conversations, staying focused on topics in conversations, and quickly forming a response, She has difficulty focusing on information processing tasks when the information comes at her rapidly. She also has difficulty focusing when there is any background noise or interference. [Plaintiff] also reports significant short-term memory deficit. There have been changes to her energy, interests and concentration. She has lost interest in activities and feels as if everything is too much trouble. [Plaintiff] rates the interference of these problems as being "severe."

R. Dr. Lyden reported the results of various psychological assessments:

**BECK HOPELESSNESS SCALE:**
[Plaintiff] reported relatively few symptoms associated with hopelessness. This is a positive sign. [Plaintiff] believes that her life will move forward and has hope for the future. This is a positive prognostic sign.

**BRIEF SYMPTOM INVENTORY:**
On the Brief Symptom Inventory [Plaintiff's] responses on the scales of depression, anxiety, somatization and the Global Severity Index were all above the 98th percentile, cutoff for the average range is the 50th percentile.

The Brief Symptom Inventory is a highly sensitive symptom of inventory designed to serve as a screen for psychological distress in psychiatric disorders in a medical population.

The BSI has three dimensions, somatization, depression, and anxiety. The somatization items reflect distress caused by the perception of bodily dysfunction. The depression items represent core symptoms of various syndromes of clinical depression. The anxiety dimension is composed of symptoms that are prevalent in most major anxiety disorders.

The Global Severity Index (GSI) represents the global or total score which

summarizes the patient's overall level of psychological distress. The GSI is a concise, quantitative indication of the patient's current level or depth of psychological dysphoria. The GSI is the single best indicator of the patient's overall emotional adjustment.

**SCL-90-R:**
On the SCL-90-R the intensity of [Plaintiff's] distress is extremely high. Her protocol reveals scores on multiple primary symptom dimensions that are elevated and are in the clinical range. It is clear that she is experiencing significant psychological difficulties and ongoing treatment is necessary.

**QUALITY OF LIFE INVENTORY:**
On the Quality of Life Inventory [Plaintiff's] responses indicate that her satisfaction with life is very low. She is extremely unhappy and unfulfilled. She lacks enthusiasm and feels that her life lacks meaning and purpose. She is having a difficult time getting her basic needs met and cannot achieve her goals in important areas of life.

**GENERALIZED SELF-EFFICACY SCALE (GSE):**
On the Self-Efficacy Scale [Plaintiff] demonstrated a high degree of confidence in her ability to cope with difficult situations and deal with any associated obstacles or setbacks. This is a positive sign indicating that [Plaintiff] should be able to benefit from the direct cognitive behavioral techniques that will be provided during treatment.

**COGNITIVE DISTORTION SCALES (CDS):**
The Cognitive Distortion Scales assesses five types of cognitive distortions; self-criticism, helplessness, hopelessness, self-blame and preoccupation with danger. These distortions/cognitive dysfunctional thinking patterns interfere with optimal functioning and result in emotional distress. The results of the CDS will be used to remediate these faulty attributions and will provide a series of coping skills and cognitive restructuring exercises that will enable [Plaintiff] to become more effective in her daily life and help her avoid and remediate depression, anxiety and "feelings of doom."

**PSYCHOLOGICAL IINFLEXIBILITY IN PAIN SCALE (PIPS):**
On the Psychological Inflexibility in Pain Scale (PIPS), the following items were endorsed as being "always true." "I cancel planned activities when I am in pain; I need to understand what is wrong in order to move on; because of my pain I no longer plan for the future; I avoid doing things when there is a risk it will hurt or make things worse; it is important to understand what causes my pain; I don't do things that are important to me to avoid pain; I postpone things because of my pain; I would do almost anything to get rid of my pain; I avoid planning activities because of my pain; and, it's not me that controls my life, it's my pain."

**PAIN EXPERIENCE SCALE:**
On the Pain Experience Scale [Plaintiff's] responses indicate that she is experiencing frustration, irritability and depression. She is angry and overwhelmed and afraid her pain will get worse over time. She often thinks to herself, "'this pain is driving me crazy and, it is so hard to do anything when I have pain." As a result of her pain, she is anxious, worries about her family and feels as if everyone is getting on her nerves- She feels song for herself as a result of her pain and disability.

[Plaintiff] *is suffering from psychological distress as a result of the motor vehicle accident in which she was involved on January 1, 2020.*

R. 924–25 (emphasis added). Dr. Lyden's diagnosed the following:

P32.9 Major depressive disorder, single episode, unspecified
R/O F07.81 Postconcussional syndrome
F45.42 Pain disorder with related psychological factors

Ongoing pain
Cognitive impairment

R. 926. Dr. Lyden recommended treatment:

Psychological treatment will provide her with a systematic means of coping, which will include techniques to help her cope with her physical pain; techniques to be included are relaxation training, attention focusing and thought stopping, cognitive restructuring and supportive care.

[Plaintiff] will also be evaluated for her cognitive deficiencies and a program of cognitive remediation provided based upon the results of that evaluation.

[Plaintiff] will also receive psychological care to help her cope with her symptoms of depression and anxiety so she is able to return to premorbid levels of psychological, functioning.

*Id.*

## V.    DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, including her contention that the

ALJ erred when determining at step two that Plaintiff's depression and anxiety either were not

medically determinable or were not severe; she further argues that the ALJ erred in failing at step

11

four to account for any mental limitations in the crafting of Plaintiff's RFC. *Plaintiff's Opening Brief*, ECF No. 8, pp. 12–16; *Plaintiff's Reply Brief*, ECF No. 11, pp. 2–4. This Court agrees.

As previously noted, at step two of the sequential evaluation, an ALJ must determine whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). Therefore, "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

The "initial prong" of this analysis is "determining whether there [i]s a medically determinable [] impairment[.]" *Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x 800, 802 (3d Cir. 2009) (citing 20 C.F.R. § 404.1520a(b)(1)). "A 'medically determinable' impairment is one that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Scipio v. Comm'r of Soc. Sec.*, 611 F. App'x 99, 101–02 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(3)). Accordingly, a "mental impairment must be established by objective medical evidence from an acceptable medical source" and an ALJ "will not use" a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.

If a claimant suffers from a medically determinable impairment, the ALJ must next consider whether that impairment is "severe[,]" *i.e.*, whether the impairment (or combination of impairments) "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "Although the regulatory language speaks in

12

terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea*, 370 F.3d at 360 (quoting SSR 85-28, 1985 WL 56856, at *3; citing *Newell*, 347 F.3d at 546). Courts must resolve any doubt as to whether this showing has been made in favor of the claimant. *Id*.; *see also Newell*, 347 F.3d at 547.

In the present case, the record demonstrates that Plaintiff's mental impairments meet this *de minimis* standard. At step two, the ALJ concluded that Plaintiff's only severe impairments were only physical, *i.e.*, degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the knees, right shoulder disorder, carpal tunnel syndrome, obesity, asthma, and obstructive sleep apnea. R. 23. The ALJ found, *inter alia*, that Plaintiff's alleged depression and anxiety either were not medically determinable or were not severe:

> The record also contains references to or allegations of mental impairments of depression and anxiety which are unsupported by objective signs and findings by an acceptable medical source (24F, pg. 7, 17F, pg. 6, 18F, pg. 6). As a result, the undersigned considers these to be nonmedically determinable. Social Security Ruling 16-3p states, "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." The regulations go on to note that a medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms (20 CFR 404.1508, 404.1529, and SSR 16-3p). There must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment that can reasonably be expected to produce the symptoms (20 CFR 404.1513(a)). Accordingly, the record includes insufficient objective evidence to establish any medically determinable mental impairments following the alleged onset date.

> In the alternative, even the claimant's mental impairments were deemed to be medically determinable impairments, they are found to be non-severe. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and

in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering or applying information. In this area, the claimant had no more than a mild limitation. The next functional area is interacting with others. In this area, the claimant had no limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had no more than mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant had no limitation.

In September 2018, the claimant denied mental health problems (Ex. 3F, p. 17) In October 2019, the claimant reported that she felt well with minor complaints and was sleeping well. She was noted to be alert, cooperative and well groomed (Ex. 30F, pgs. 10-11). In July 2020 she was noted to be anxious, however, her affect was appropriate, her thought processes logical, relevant organized and coherent and she was oriented to time place and person with normal attention (Ex. 30F, pgs. 15). The claimant reported that she drives a car, is able to go out alone, and shops in stores for groceries (Ex. 5E, p. 3). She reported that she does not need help or reminders to take her medications or care for her personal needs (Ex. 5E, p. 4). In addition, she reported that she has no difficulty getting along with others and is able to read, pay bills, count change and handle a savings account (Ex. 5E, p. 6). She reported having no difficulty following spoken or written instructions or in getting along with authority figures. (Ex. 5E, p. 7) She reported having problems paying attention (Ex. 5E, p. 8). She reported that she does not have panic attacks (Ex. 5E, p. 12).

Subsequent to a January 2020 motor vehicle accident, the claimant underwent a psychological evaluation on February 2020, alleging in part, problems concentrating, irritability, fatigue, moodiness and depression (26F). Her mental status examination was within normal limits, with the examiner noting that she was calm, cooperative, well groomed, with normal speech, appropriate affect, full orientation, good fund of information, good abstract reasoning and depressed mood, and with no evidence of a thought disorder. The claimant reported that she had no prior mental health history of treatment other than for a brief period in 2005 to deal with stress. Despite these findings, the report indicates significant mental health findings and post concussion affects, primarily based upon the report of the claimant.

The undersigned notified the representative on the record at the hearing that she was not admitting the evidence from Dr. Lyden in Exhibit 26F as it was incomplete (missing pages 5-9) and was filed the day of the hearing without a five day letter as required (Per Audio 1:20:00-1:20: 40 pm the undersigned mistakenly said she was not admitting Exhibit 25F). However, the exhibit has been permanently marked by this office and cannot be deleted from the Exhibit list. The undersigned has given little weight to this evidence in formulating the residual functioning capacity assessment. The record does not support a finding of any severe mental impairment.

R. 23–25.

Turning first to the initial prong of the step-two analysis, the ALJ found that Plaintiff's depression and anxiety were not medically determinable impairments because there was "insufficient objective evidence" from an "acceptable medical source[.]" R. 23–24. In reaching this finding, however, the ALJ does not refer to or even acknowledge Dr. Lyden's psychological evaluation. *See id*. Dr. Lyden, a licensed psychologist, R. 926, is an "acceptable medical source." 20 C.F.R. §§ 404.1502(a)(2), 416.902(a)(2). As detailed above, Dr. Lyden diagnosed, *inter alia*, major depressive disorder, single episode, unspecified. R. 926. Dr. Lyden's evaluation supporting this diagnosis consisted of a neuro-behavioral status examination as well as psychological testing "to determine the validity, severity and specificity" of Plaintiff's symptoms. R. 923–26. Testing included, *inter alia*, the Beck Depression Inventory-II on which Plaintiff's score was "at the severe range." R. 924. The United States Court of Appeals for the Third Circuit has indicated that the Beck Depression Inventory is "relevant" to determining whether a claimant has a serious impairment. *Morris v. Barnhart*, 78 F. App'x 820, 824 (3d Cir. 2003) (noting, *inter alia*, that this test indicated that the claimant's "major depression" was in the "severe range" but stating further that such evidence "does not indicate the extent to which her [the claimant's] depression restricts her life activities"). Under these circumstances, this Court cannot conclude that substantial evidence supports the ALJ's finding that Plaintiff had no medically determinable mental impairment. *See id*.

The Court also finds problematic the ALJ's alternative conclusion that Plaintiff's mental impairments, even if medically determinable, were not severe. The ALJ found that Plaintiff had no or only mild limitations in the four broad functional areas, *i.e.*, the paragraph B criteria. R. 24 (finding that Plaintiff had only mild limitations in the areas of understanding, remembering, or

15

applying information, and in concentrating, persisting or maintaining pace, and no limitations in

the areas of interacting with others and adapting or managing oneself). In making this finding,

the ALJ relied heavily on evidence from 2018—including Plaintiff's function report—and

evidence from 2019, all of which pre-dated Plaintiff's January 2020 motor vehicle accident and

Dr. Lyden's February 2020 psychological evaluation. R. 24, 923–26 (noting, *inter alia*, that

Plaintiff "is suffering from psychological distress *as a result of the motor vehicle accident in*

*which she was involved on January 1, 2020*") (emphasis added). Although the ALJ later

considered Dr. Lyden's evaluation, the ALJ emphasized only those findings that fell within

normal limits and concluded that Dr. Lyden's "significant mental health findings and post

conclusion affects" were "primarily based upon the report of the claimant." R. 24. The ALJ also

accorded "little weight" to Dr. Lyden's evaluation because, as the ALJ had announced at the

administrative hearing, the evaluation suffered from technical deficiencies. R. 25 (explaining that

such evidence would not be admitted because it was incomplete—missing pages 5 through 9—

and was filed the day of the hearing without a five day letter as required). Nevertheless, however,

the ALJ appears to have relied on Dr. Lyden's normal status examination findings when

concluding that Plaintiff had mild or no limitations in the four broad areas of functioning. R. 23.

The ALJ made no mention of Dr. Lyden's recommendation that Plaintiff "receive psychological

care to help her cope with her symptoms of depression and anxiety so she is able to return to

premorbid levels of psychological functioning." R. 926. Nor did the ALJ acknowledge that

Plaintiff had been prescribed psychotropic medication since the motor vehicle accident in

January 2020. R. 24–25, 938 (reflecting that as of January 27, 2020, Plaintiff was taking

Cymbalta for depression), 931 (reflecting that as of May 4, 2020, Plaintiff was taking Celexa for

anxiety), 935 (reflecting that as of March 19, 2020, Plaintiff was taking Celexa). Notably,

psychological care and psychotropic medication support a step two *de minimis* finding that a mental impairment is severe. *See Magwood v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 133 (3d Cir. 2008) (finding that the claimant's evidence that the claimant "receiving psychiatric services on a regular basis, was engaged in therapeutic counseling on a weekly basis, was taking antidepressants, was assessed as functioning with a GAF of 55–60, and had an opinion from a treating psychiatrist that she was unable to work on a sustained basis" "was more than sufficient to satisfy step two's *de minimis* threshold") (citing *Newell*, 347 F.3d at 546; *McCrea*, 370 F.3d at 361); *Istrefî v. Comm'r of Soc. Sec.*, No. CIV.A. 13-3095 SDW, 2014 WL 4269132, at *7 (D.N.J. Aug. 29, 2014) (finding that the ALJ should have considered evidence at step two, including, *inter alia*, that the claimant's primary care physician prescribed "various psychotropic and psychoactive medications" such as Cymbalta).

This Court cannot avoid the conclusion that the ALJ selectively cited, without explanation, medical evidence that supported her assessment and ignored contrary evidence. *See Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records").

It is true that, "[g]enerally, an error at step two is harmless because it is a threshold test. . . . As long as one impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments." *Herring v. Colvin*, 181 F.

Case 3:23-cv-03121-NMK    Document 13    Filed 07/10/25    Page 18 of 19 PageID: 1112

Supp. 3d 258, 276–77 (M.D. Pa. 2014) (citations omitted); *see also Swaney v. Saul*, No. CV 18-

1530, 2020 WL 529602, at *2 (W.D. Pa. Feb. 3, 2020) ("Rather, the ALJ proceeds beyond step

two and, in so doing, an ALJ makes an RFC determination taking into consideration all

impairments, including any impairment that is not severe. Thus, an ALJ will proceed to consider

a plaintiff's severe and non-severe impairments in the evaluation process in determining a

plaintiff's [RFC]."); *Taylor*, 2018 WL 2298358, at *8. "However, an error [at step two of the

sequential evaluation] can harm the claimant if an impairment is improperly found to be not

medically determinable or when non-severe impairments are not considered at later steps."

*Herring*, 181 F. Supp. 3d at 277.

        In this case, the Court cannot conclude that the ALJ's error at step two regarding

Plaintiff's mental impairments was harmless. The ALJ never again mentioned Plaintiff's mental

impairments after step two. *See generally* R. 25–30. Plaintiff's mental impairments therefore

"were effectively screened out of the analysis at step two. As a result, the potential effect of the

[mental] impairments, alone or in combination with each other and the [physical] impairments,

was not analyzed at step three or subsequently." *Melendez v. Colvin*, No. CV 15 -3209, 2016 WL

4718946, at *4 (D.N.J. Sept. 8, 2016); *see also Swaney*, 2020 WL 529602, at *2 (stating that "an

ALJ must consider all of a claimant's impairments, including non-severe impairments" when

making an RFC determination and remanding where "the ALJ fails to recognize, mention or

discuss Plaintiff's mental impairments" at later steps); *Taylor*, 2018 WL 2298358, at *4, 9

(remanding where the ALJ effectively "'screened out' of the remaining disability evaluation

process at Step Two all of Plaintiff's mental impairments"). Accordingly, the Court cannot

conclude that substantial evidence supports the ALJ's decision. The matter must therefore be

remanded to the Commissioner for further consideration.

It may be that, on remand, the ALJ will again find that Plaintiff's mental impairments are not severe and ultimately conclude that Plaintiff is not disabled. However, at this juncture, the ALJ must explain her evaluation of Dr. Lyden's report and consider any other record evidence of Plaintiff's mental health treatment. If otherwise appropriate, the ALJ must also consider Plaintiff's mental impairments beyond step two of the sequential evaluation process.

In short, this Court concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of Plaintiff's mental impairments.[5]

## VI.    CONCLUSION

The Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 10, 2025                                    *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's mental impairments, the Court does not consider those claims. However, it would be helpful on remand if Plaintiff (and, if necessary, with the assistance of the ALJ) obtains and submits for the record a complete copy—*i.e.,* pages one through nine—of Dr. Lyden's report.

19